HOBSON, Justice.
This appeal is prosecuted from judgment and sentence • entered consequent upon a verdict of guilty of second degree murder.
The sole question which we deem it necessary to discuss is whether or not the evidence is sufficient to support the verdict. Decedent, James Patterson, was employed in the boiler room of a crate factory in Jasper, Florida. He had a history of absenteeism, was apparently rather sickly, and drank somewhat heavily. At five o’clock in the afternoon of April 9, 1956, Patterson arrived at the factory to work the night shift. At approximately six thirty of the same afternoon his wife, Ella Mae Patterson, appellant herein, brought the decedent his supper, as was her custom. The repast delivered to the decedent included a half gallon jar about half full of a substance known as “Kool-aid”, of strawberry flavor. This quantity of liquid was consumed by the decedent except for approximately “three swallows” taken by a fellow employee, one W. O. Bryan. About five minutes after taking the three swallows, Bryan became sick and vomited, but went back and worked all night. Decedent continued to work for approximately thirty minutes after drink-' ing the Kool-aid, but then complained of being sick and went home.
On April 14, 1956, decedent went to the office of Dr; Curry, where he complained of nausea and diarrhea. He was given glucose and sent home. Dr. Curry testified “the first time I saw him we were having an epidemic of diarrhea and vomiting around Jasper * * * ” Decedent returned to the doctor’s office on April 16, 1956, and Dr. Blackmon examined him. Dr; Blackmon administered glucose in the office and sent the decedent to Suwannee County Hospital, where he died on April 19, 1956. Thereafter, the body was transported to' the Pine View Hospital in Valdosta, Georgia where an autopsy was performed by Dr. Davis, a pathologist. From the autopsy Dr. Davis was of the opinion that decedent met his death by poisoning.
Appellant was indicted on the charge that on April 9, 1956, she murdered the decedent by giving him arsenic. As we have stated, Dr. Davis, the pathologist, was of the opinion that decedent died from poisoning. He had sent certain portions of the body of decedent to one Dr. Herman Johns, of Atlanta, Georgia, who had reportedly analyzed them and had expressed the .opinion that the poison used was arsenic. Dr. Johns was not brought in to testify, and,’ upon timely objection, the trial judge ruled that the portion of the report of Dr. Davis regarding arsenic, which was based' upon *806 the opinion of Dr. Johns, was inadmissible in evidence. Dr. Curry testified,that in his opinion the decedent died from arsenic poisoning, but a study of his entire testimony reveals that he based this opinion upon the proposition that it was "proven" to be arsenic that killed the decedent, and the only proof was contained in the inadmissible portion of the pathologist’s report. Even the pathologist could not testify positively that the poison used was arsenic, and the case stands, in our view, with the identity of the poison as arsenic unproved. The medical testimony is otherwise completely inconclusive.
We are thus confronted with a situation where the decedent was proved to have died by poisoning. The fact that he went home sick on April 9, 1956, is of no special significance, in view of his absenteeism and apparent poor health. The fact that Bryan, the fellow employee, was nauseated after drinking the Kool-aid, coincidental though it was, is considerably weakened in its significance by the fact that there was “an epidemic of diarrhea and vomiting” around the locus of these activities at the time. Although Dr. Davis testified the decedent died of a “rather massive dose of poison”, decedent did not die until ten days after drinking the Kool-aid. This is not adequately explained by the medical testimony.
It will thus be seen that the evidence tending to connect the appellant, Ella Mae Patterson, with the crime was entirely circumstantial in character and, while it may have been consistent with guilt, it could not be considered inconsistent with innocence of the crime charged. See Horton v. State, Fla., 91 So.2d 304; Smoak v. State, Fla., 87 So.2d 513; and Raybon v. State, Fla., 75 So.2d 7.
The judgment appealed from is reversed and the cause remanded for new trial.
TERRELL, C. J., and DREW and O’CONNELL, JJ., concur.